Well, your honors, Jim Mitchell for Chase Manhattan Bank. How are you? I'm very good, your honors. I can sum up... It's too bad about not recording the lien. Pardon me? Why would a bank not record whenever it gets a deed of trust? Well, in this case... I mean, maybe it has a theory, oh, we'll be protected because we recorded a previous deed of trust. No, I don't... I just don't understand why it wouldn't go to the recorder's office. Well, somebody made a mistake, and that's the only thing that I can say. It's not like a policy. We don't want to spend $10 every time we do a refinancing. No, your honor, the way this worked is Chase hires a title company to do the title insurance. Somebody just drops the ball now and then on... Somebody dropped the ball and didn't record the deed of trust, and then somebody issued the title insurance policy. Simple as that. Okay, I've got a couple questions that follow from that. I do not actually see much of a problem with that professional investment case, because in that one, the way the BAP has distinguished it by saying it's an involuntary instead of a voluntary filing, and that's not a trivial distinction because there's a blank on the involuntary form for listing liens, and there's no blank on the voluntary form. You have to file a separate schedule where the liens are listed, and that was done here. Now, the schedule was probably filed a second after the petition was filed. Probably the lawyer brought the pile of paper in, and the clerk just shoved them in the stamping machine, the time clock that stamps the filing time. Nevertheless, the trustee gets his BFP status at the instant of filing. I don't see why the failure to record doesn't mean game over, professional investment distinguished. Well, because I don't think that professional investments necessarily turned on the fact that it was an involuntary petition. I think professional investments turned on the fact of whether the trustee received simultaneous notice of the unrecorded lien. I think what the BAP was thinking was probably that professional investments was kind of a stretch because 544A3 is such a powerful provision, and they were pretty much confining it where they could. Well, I don't think it's that much of a stretch, Your Honor, because I think that professional investment, rather than turning on bankruptcy law, turned on the state law of constructive notice. And I think what occurred here was a little bit different than the clerk taking the petition. Well, the notice is of a nonexistent metaphysical entity, a trustee who has not yet been appointed at an instant when nobody could possibly have been looking and that would pass too fast for anyone to read anything, the instant of filing. Well, I think the instant of filing is the key point here is that the petition and the schedules were simultaneously filed electronically. The petition doesn't list the lien. Nothing on the planet can be simultaneous if it's sequential. Well, see, I disagree with you because I don't believe that the petition and the schedules were sequential. I believe that they all appeared on the screen because they were filed electronically as one document. If I send an e-mail to my three kids and their two spouses, five e-mails, and I just punch the send button once, the computer still sends the little packets of information sequentially, and there is an instant when one e-mail has gone and not the next. I think I disagree with you there, Your Honor, because the way of the electronic filing is the documents are all simultaneously filed, and that's what the docket shows. And, in fact, that's what the dead or stated in a later filed document. So I think that the distinction there is if you use the term simultaneous, the trustee does get noticed because the chaste deed of trust is in the petition. And I think there's one other point, and it's this. What you're saying is that legally it's simultaneous filing, even if in terms of the little electrons doing their jobs, it's sequential. No, I don't think that it's sequential at all. I think that factually it's simultaneous. I know it is in terms of the physics of it. Every little beep or flick or light over the fiber optic cable has to come before or after another one. But I think what you're saying is that legally it's simultaneous filing. Well, I think both factually and legally it's simultaneously, in my opinion. I missed that part, frankly, when I studied the case in preparation. Do you have some law on the significance of the word simultaneous for this purpose? Well, Your Honor, only what I cited, which is Webster's Dictionary, which I think, at least in my opinion, is all you need here to define what simultaneous meant in professional investment. So what you're saying is because the filing of the schedule and the petition is simultaneous filing, then at the instant the petition is filed, there is also notice of the lien from the schedule. That's correct, Your Honor. Are they the same docket entry or are they separate docket entries? Your Honor, I thought it was one docket entry, but I can't from memory say whether it is or it isn't. Assuming that's correct, do you think the clerks, whenever they staple something, that's a separate docket entry? Well, see, I don't know how they do it electronically, Your Honor. And I just don't know the page numbers. Let's only take us a second. Counsel, the schedules do not have to be filed with the petition. Is that correct? That is true, Your Honor. So are you saying that we should have a ruling that if the petition has the schedules attached to it at the same time the petition is filed, there's one rule, but if the schedules are filed later, there's a different rule? Yes, Your Honor. That's correct, and I think that the case about the simultaneous filing that Judge Kleinfeld was asking me for was the N. Ray Harvey case, which followed professional holdings in that construed situation where it wasn't an electronic filing, but it was a filing where the petition and the schedules were actually physically stapled together. So how do we determine when later is? If it's a minute later, would it be later? If it's a day later, would it be later? Where do we draw the line in terms of determining whether or not the petition and the schedules were filed at the same time? I think, Your Honors, if the petition and schedules are filed, let's say that the petition is somebody walks in right here, I hand you the petition. I come back to the podium and I walk up and I hand you the schedules. That's separate. If I walk up to you and hand you the petition and the schedules stapled together, whether it's figuratively or physically, I'm handing those things to you at the same time. How would we know that? You know, a year down the line, if the clerk's office says they didn't come in together, they came in 10 minutes apart, how would we know that you handed them to the clerk at the same time? I think that's a fact question, Your Honor. I think you look at what is in the file. That's my point. Should we have to have many trials on when the schedules and the petitions were filed in order to resolve issues like this? Or should we have a blanket rule that it's the petition and the petition only? It appears to me that we would be inviting a lot of litigation if we adopted your argument. Well, I think that that were true, Your Honor. I think that the litigation certainly would have happened more before now because there hasn't been. Well, we make a rule and I'm sure the litigation will come. I'm not going to try to predict the future on that one, Your Honor. I don't even see why it should help your side of the case. This is all metaphysical anyway. The trustee isn't really a BFP. He doesn't buy without notice for value. He's not a purchaser. It's all imaginary. It's just a way of deciding who gets ahead and who gets behind in the priority list. It's really a matter of making rules. It's not as though as soon as something's filed, the trustee runs down to the clerk's office and goes and reads it. And he says, oh, great, I don't see any liens. I can divide up all this value over the unsecured creditors. And then an hour later, the clerk calls him up and he runs back in and says, oh, gee, there's a lien, but I already bought the property. Well, he didn't buy the property. He wasn't even there. He didn't go to the clerk's office. None of this really happened. It's all just imaginary. And it's all just imaginary metaphysical stuff to decide who gets ahead of whom in the line for the money. Well, Your Honor, I don't think it was an imaginary metaphysical thing because of this. First of all, even though the petition does not have a space for describing a lien or anything like that, it does have a space for describing earlier bankruptcies. But it seems so simple and practical as well as consistent with the language of the statute to say, if you don't go to the recorder's office and record your lien, then in a bankruptcy, you're going to be treated like an unsecured creditor instead of a secured creditor. Well, I'm not necessarily sure that that's exactly the case based upon the professional investments holding. And I believe also based upon just basic constructive notice law or inquiry notice. Because the other thing you have here working within the bankruptcy system was the earlier Chapter 13 filed by Duell, where she had a set of schedules that described the chaste deed of trust and the note. Barely three months before she filed the Chapter 7, that Chapter 13 was dismissed. She had to reference that 13 in her petition. Actually, that struck me as cutting against chaste. The equities think that it looks like they're just making repeated loans during the housing bubble without checking anything out. But that's not necessarily true, Your Honor, because the loans occurred almost a year before the Chapter 13. And I might add that part of the chaste $136,000 loan, part of the record shows that the money that was not used to pay off the earlier chaste loan was actually used to pay some of Duell's unsecured debts. So it isn't as if chaste is making loan after loan in the face of a bankruptcy. That's not what happened. What I'm saying is that when you put down in your petition, forget the simultaneous filing bit, but when you put down in your petition that I filed in earlier Chapter 13, that is certainly putting the trustee on notice of an earlier bankruptcy. Now, what would the trustee have inquiry notice of? Well, what happened in that bankruptcy? Because that may have some effect on the current Chapter 7 bankruptcy. And I think the key thing here is to follow the state law on constructive notice. And the state law on constructive notice, whether it's because of that Chapter 13, naturally leads the trustee to the petition and schedules that show the chaste loan. One last thing before I sit down. This chaste loan, or an encumbrance against this property, from the minute Duell bought it in 1999, there was always a $100,000 loan against it. In reality, what's happened here is – when the bank refinances, that they pay off the old loan and discharge the mortgage and make a new loan and have a bigger mortgage. I thought that that was the routine rather than, say, you start off with a $100,000 loan and a deed of trust securing a $100,000 loan, and then the market goes crazy, so you loan the homeowner another $50,000 and you get a deed of trust for the new $50,000 promissory note. I thought what they did was discharge the old ones and get new promissory notes for the whole amount and new deeds of trust for the whole amount. That's exactly what happened here, Your Honor. The initial loan, when the Duells purchased the property, was about $101,000. They refinanced through another entity for $121,000. The old field loans paid off in the old deed of trust. Yes, yes. And then Chase bought the $121,000 loan, and then in 2001, September 2001, Duell applied for the $136,000 loan from the same lender, so there was a $15,000 difference. And she used the money, of course, to pay off the $121,000 loan to pay some unsecured debt, and I don't think she got any money out of it. So I get back to the fact that – She's getting another $15,000 out of the equity in her house because of the increased value in order to pay off, I don't know, credit card debt or personal debt or something. That's exactly what she did, and that's what the closing statement on the Chase loan shows of what she did. It is a new promissory note and a new deed of trust. Yes. And it's for the whole amount, not just for the supplements. It's for the full $136,000, Your Honor. So I don't know what more I can add, but I think from an equitable standpoint, granted, Chase screwed up, no doubt about it, by not recording that deed of trust, but I don't think it should result in a windfall to even a metaphysical trustee, Your Honor, especially where the whole thing is an open book from day one that this property has got at least a $100,000 lien against it. Thank you. Your Honors, good morning. Michael McKinnon on behalf of the FLE. No question that the facts are not in dispute here. We have the unfortunate situation during the feeding frenzy of loans being made in the inflationary real estate market. Some clerk failed to record a deed of trust. The trustee does not dispute that the money was lent, that Chase received the original note and the original deed of trust, just failed to record it. Under these circumstances, 544-83 says the trustee steps in as a bona fide purchaser for value and even goes on to say that it's without any actual notice. You've got professional investment that sort of stands in the way. Your Honor, I believe that the fact that that was an involuntary petition applying the commission. It doesn't say that it's an involuntary petition. I don't know why it should make a difference that it was an involuntary petition. Your Honor, I believe the description of the professional investment properties case at all levels did reflect that it had been involuntary. I understand, but it's also involved an entity called professional investment. But that wasn't relevant to its rationale. There's nothing about its rationale that is limited to involuntaries. So that's a distinction that you've drawn, but I don't see why it's a distinction that matters. Well, two points, Your Honor. Number one, this panel is not empowered to make the determination that would have to be determined on bonk. We frankly believe that the first professional investment properties decision was incorrect. Could you pretend that you are sitting pro tem on this panel? I have often wished that the lawyers who knew more than I did about the law and also about the facts of the case could do that. Now, let's imagine that while you're sitting pro tem on this panel, you get assigned the writing task. Could you now recite for me the paragraph that you would write where you say why professional investment does not control and require reversal of the BAP? Your Honor, I can't set him up to that task, but the best I could do would be to point out that the Ninth Circuit's controlling authority indicates that when the very face of the petition indicates that the petitioning creditor asserts a security interest based upon a grant that undisputedly had been given as security for a loan that indisputably had been given, puts the parties on immediate notice prior to the entry of the order for relief within the Chapter 7 case of the existence of that very claim, that assertion of a security interest. That is not the case in the case at bar. In this case, Your Honor, we have a simple Chapter 7 petition that does not come from the hands of the punitive secured creditor at all. Okay, so far so good. You've said distinguish professional investment because this is a voluntary filing, that's an involuntary filing. Now, in order to keep somebody from calling the case en banc, you've got to explain why that's a good distinction. Your Honor, going back to when 544 was enacted and 544A3 was enacted, not just as a recompilation of the Bankruptcy Act, but as an addition to the Trustees Avoiding Powers in the enactment of the Code in 1978, effective in 1979, electronic filing did not exist. There was no simultaneity of the petition with the schedules and Statement of Financial Affairs. And, in fact, I do not believe that there was electronic filing available in the Western District of Washington when the professional investment properties case was initiated as an involuntary. So there is a very significant difference. The pleadings would be docketed not as a single entry, but rather in order of receipt physically by the Trustee. They may be delivered at the same time, but they will be put on record. I don't have a docket sheet. There's a docket sheet here of the BAP. There are several copies of the BAP docket sheet, but for some reason whoever prepared the excerpt of record did not include a docket sheet for the Bankruptcy Court. Your Honor, regardless of who prepared it, if the appellant left it out, I should have added it, and I apologize. Yeah, you're both wrong, but I should have included it. But what does it say? Is it a petition under schedules? Are they a single docket entry or a separate docket entry? Your Honor, I do not recall. I'm sorry. Obviously, should the Court so request, we can provide that. I do not have it. It's electronic, right? So I suppose we can just get it, just like any member of the public. Yes, Your Honor. It certainly is available. I'm sorry, Your Honor. I interrupted your question. That was my question. Your Honor, I do not believe that it makes anything, any difference whatsoever. If you look at the petition. Well, why not? Let's say it's one docket entry. Then, Your Honor, you're looking at a situation where there would be complete evisceration, section 544-83, whenever you have a thorough and honest debtor submitting his or her schedules. That's what professional investment says. You may not like it. Maybe you want to call for embank after you lose here or you win here. You might want to call for embank either way. But maybe professional investment is a bad decision. But it is our decision. It's ours. We own it. Yes, it is. And we fully recognize that, Your Honor. I think, however, that there is an important distinction between the identity of the person on the petition as the accused. What is it in professional investment? Let's read it together. And what is it in professional investment that causes you to make that argument? Let me just flip to it and show me where it says it makes a difference who filed the petition. Your Honor, I believe if you will look at page 628, Your Honor, I believe the court said there is no reason. There are two columns. Which column is this? My apologies, Your Honor. I'm reading from my brief. I believe I have. You want me to look at 628 and you read from your brief? Do you have 628 there? Your Honor, I do not have 628. I only have the quote that appears on 628. Your Honor, I believe I have. No. You have the key case and you don't bring it to court with you? Your Honor, I printed my case out of Westlaw rather than out of the formal. Well, that's a mistake right there. But Westlaw indicates page numbers. So you should be able to figure out by looking at Westlaw which page number it is in fact. You should be able to find the passage. It is page 628, Your Honor. I'm looking for which column on which it appears. Is it sort of close to the end of the page or close to the beginning of the page? All right. What does the paragraph start with? What's the first word in that paragraph? That's a simple question. You should be able to answer that question. What's the first word in that paragraph? Your Honor, I apologize. I have the first word of the sentence. Well, you have the whole case there, right? Yes, Your Honor. So you should be able to find your quote inside the case, which should then be able to tell you which paragraph you're in. Do you find your quote? Your Honor, my apologies. I do not. Maybe it's not there? You've looked at all of page 628 and the thing that you have in your brief is not in the page? I do not. If you can't find it, how am I going to find it? Your Honor, it is towards the latter part. What is the first word of the paragraph? We are persuaded. All right. I got the paragraph. We are persuaded by the district court's holding. There is no practical reason why a trustee should not be put on inquiry notice by the very petition that created his position. A trustee who has not yet been appointed can hardly argue that he has been prejudiced by being charged with notice of the petition. Your Honor, you were going to prove to me that who files a petition matters, and that's the thing you were going to read me a passage to prove. I read that paragraph and actually marked it when I read it because it referred to the very petition that created his position. And it earlier said the case turns on whether the petition itself with the trustee on sufficient inquiry. Here it's undisputed that the petition itself didn't. The simultaneously filed schedules did. And I'm trying to find out whether it makes a difference now that they're simultaneously filed. The argument that simultaneous filing didn't exist then because they didn't have electric docketing seems to me to hurt your side's position rather than help it. Getting back to the metaphysics, Your Honor, if I may, we are talking about the creation of a fictitious legal entity, a bona fide purchaser as of the date of the commencement of the case, the instant of the filing of the petition itself. As the BAP indicated in its opinion, they are two separate documents, official documents that need to be filed to be accepted by the clerk's office. The petition is one document, and it's then supplemented by the schedules of assets and liabilities as a statement of financial appearance, either at the time of the filing of the petition or within the rest of the timeframe thereafter. How much money are we talking about here? Your Honor, we have the only evidence of value is from the schedules. We never got beyond that. The debtor indicated the value was $245,000 at the time of the filing of the petition. And that's among the lien? And those are lien? That was a senior lien. And there is a lien for a homeowner's association as well and real property taxes. It seems to me you guys should be able to settle this case. We have tried, Your Honor. I think you need to try harder. It could go either way. It's close to lunchtime, you know. Why don't you gentlemen go to a nice place in Pasadena and have lunch and try to settle this case? Very well, Your Honor. Okay. We'll defer submission for a week. If you want us to defer further, we will just write us a note. If not, we'll submit the case and decide it. Thank you. If you wish help, we have a very fine mediation office that does wonderful work and you can avail yourself of that. Just call the mediation office. The clerk will give you the information, the deputy clerk. We have that information. We tried once. I think your comments will make us try again. Yeah, I think you should try again. I'm just kind of curious, but I know I can't properly get an answer to my question. Usually the bank is the hard head, but here they're the ones that drop the ball on recordings, so I would think it would be easier to put together a deal. But not my problem. Your Honor, I cannot comment on that. You've heard our questions. You know, there's a recording. There might even be a video recording of this whole event. And if you're not careful, we'll put it on YouTube. No, I'm kidding. Thank you. But, I mean, if you want to sort of hear what the questions were, you know, sometimes in the heat of the argument you may not remember, but you'll be able to listen to the argument very quickly, and you will see that this is not going to be an easy case. There are good arguments on both sides. So this seems to be just money involved. Nobody's going to die. You know, we're not talking about anybody's health or anything like that. It's just money. So this is capable of being settled. Okay? I have faith in you, Judge. You both seem very reasonable, fine lawyers. You can do it. Thank you, Your Honor. All right, we're going to defer submission for a week. If you want us to continue, either send a letter asking, or if you're using the mediation office, they will inform us. Very good. You can count on them to let us know. But if we don't hear one way or the other in a week, we will submit and decide. Okay? Thank you. Thank you, Your Honor.
judges: Kozinski, Kleinfeld, Rawlinson